UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MICHIGAN
NORTHERN DIVISION

KEITH MADDOX-EL,

       Petitioner,

v.                                    Case Number: 1:07-cv-11349-BC
                                     Honorable Thomas L. Ludington

KENNETH MCKEE,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONS FOR WRIT
OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY, AND DENYING AN APPLICATION FOR LEAVE TO
PROCEED ON APPEAL *IN FORMA PAUPERIS***

Petitioner Keith Maddox-El is presently incarcerated by the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan. He filed this *pro se* habeas petition pursuant to 28 U.S.C. § 2254 challenging his 2004 Wayne County jury convictions for felon in possession of a firearm, possession of marijuana with intent to deliver, possession of cocaine less than twenty-five grams, and felony firearm. He was sentenced as a habitual offender, fourth offense, to concurrent prison terms of three to fifteen years for the felon-in-possession conviction and one year to fifteen years each for the marijuana and the cocaine convictions. Also, because of Petitioner's habitual offender status, he was sentenced to a consecutive prison term of ten years for the felony-firearm conviction.

In his *pro se* pleadings, Petitioner suggests seventeen reasons why his convictions and sentences are unconstitutional. Respondent Kenneth McKee has filed an answer contending that Petitioner's claims are either noncognizable, lack merit, or are procedurally defaulted. Petitioner's convictions and sentences are constitutionally sound and the petition will be denied. The Court will

also decline to issue Petitioner a certificate of appealability and will deny an application for leave to proceed on appeal *in forma pauperis*.

**I**

This case arises because of an incident that occurred on May 10, 2004, when police officers executed a search warrant at Petitioner's home located at 19992 Irvington in Detroit, Michigan. The police obtained the warrant after an undercover drug transaction was effected at the home and after surveillance on the home revealed suspicious activity.

The officers found Petitioner and a woman in an upstairs bedroom. Petitioner told the officers that he lived in the house and gave his address as 19992 Irvington. As the officers apprehended Petitioner, he said, "all I have is that weed in that computer cabinet." Trial Tr. vol. III, 37 Aug. 18, 2004. When Officer Michael Carson opened the computer cabinet, he found one clear plastic sandwich bag containing loose marijuana, two zip-lock bags of marijuana, and one clear zip-lock bag containing twenty-three one inch by one inch bags of marijuana. The total amount of marijuana found in the cabinet was 40.75 grams.

In addition to the marijuana, police also found a Blue Sky .30 caliber rifle in a plastic case in the living room behind a couch, although no ammunition was found. Under the bed, the officers discovered a plate with .60 grams of crack cocaine. Numerous empty zip-lock bags were found in the living room, as well as a bulletproof vest with the word "Rambo" written on it and seventy-five dollars in cash.

At trial, Joyce Rivers testified for the defense. She stated that she used to live next door to Petitioner on Irvington and had asked him if she could store some of her belongings at his house after she was evicted. Rivers stated that she moved her living room furniture, her clothing, a

-2-

refrigerator, and a .22 caliber rifle in a brown leather case into Petitioner's living room.  She testified

that she did not tell Petitioner that she had left the gun at his residence.

The jury convicted Petitioner.

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of
Appeals, raising the following four claims: (1) the trial court erred in not allowing withdrawal and
substitution of his trial counsel; (2) trial counsel was ineffective for allowing admission of his prior
narcotics conviction; (3) the evidence offered at trial was insufficient to show that he possessed a
firearm; and (4) he was sentenced based on facts that were not found by a jury beyond a reasonable
doubt.

Petitioner also filed a supplemental brief with the Court of Appeals in which he raised the
following five additional claims:

I.      [Petitioner] was denied effective assistance of counsel due to counsel's
failure to file discovery, failure to argue and obtain a ruling of [Petitioner's]
motion to suppress [the] search warrant and failure to produce alibi witnesses
on the relevant record in violation of the Sixth Amendment and Article I,
Section 17, 20 of the Michigan Constitution.

II.     [Petitioner] was denied his constitutional right to present a defense when the
trial court denied his request for a continuance in order to secure the presence
of alibi defense witnesses in violation of the Fourth, Fifth, and Fourteenth
Amendments and Article I, Section 17, 20 of the Michigan Constitution.

III.    The prosecutor's failure to timely comply with discovery due to lack of
jurisdiction and the fact that no probable cause existed for [the] search
warrant denied [Petitioner] his constitutional rights to a fair trial and due
process of law in violation of the Fifth, Sixth, and Fourteenth Amendments
and Article I, Section 17 of the Michigan Constitution.

IV.     [Petitioner] was denied effective assistance of counsel because counsel failed
to argue and obtain a ruling on [his] motion to dismiss [the] search warrant
due to no relevant record of not having constructive possession or possession
of a firearm.

-3-

V.      [Petitioner] was denied effective assistance of counsel because counsel failed to argue and obtain a ruling on [his] motion to suppress [the] search warrant in violation of the Fourth and Fourteenth Amendments and Article I, Section 2 of the Michigan Constitution.

On May 23, 2006, the Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Maddox*, No. 257981, 2006 WL 1412794 (Mich. Ct. App. May 23, 2006). Petitioner then filed a application for leave to appeal the Court Appeals's decision with the Michigan Supreme Court, raising what appears to be the same nine claims. The Supreme Court denied his application on September 26, 2006. *People v. Maddox-El*,[1] 477 Mich. 868, 721 N.W.2d 196 (2006). On February 27, 2007, the Supreme Court denied his motion for reconsideration. *People v. Maddox-El*, 477 Mich. 1035, 727 N.W.2d 601 (2007).

While the appeal was pending, Petitioner filed a motion for the production of transcripts of an audiotape with the state trial court, which was denied on August 29, 2005. *People v. Maddox*, Nos. 04-5427, 04-8419 (Wayne Cnty. Cir. Ct. Aug. 29, 2005). He subsequently filed a motion for reconsideration of the production of the transcripts of the audiotape, along with a motion for remand and for an evidentiary hearing to suppress the search warrant and affidavit, with the Michigan Court of Appeals. On November 3, 2005, the Court of Appeals denied both motions. *People v. Maddox*, No. 257981 (Mich. Ct. App. Nov. 3, 2005). On January 30, 2006, the Michigan Supreme Court denied his application for leave to appeal the November 3, 2005 Court of Appeals's order. *People v. Maddox*, 474 Mich. 1027, 708 N.W.2d 415 (2006).

In that same month, Petitioner filed a civil action against Wayne Count Circuit Court Judge Diane M. Hathaway with the Court of Appeals. On January 4, 2006, the Court of Appeals returned

---

[1]On some opinions and order, Petitioner also is known as Keith Maddox-El, as he is in this opinion.

-4-

the pleadings to Petitioner because "MCL 600.2963 mandates that a prisoner pursuing a civil action be liable for the filing fees." *Maddox v. Wayne Cir. Judge*, No. 266853 (Mich. Ct. App. Jan. 4, 2006). Apparently, Petitioner did not pay the required fees and the action did not progress any further in the Michigan court system.

Petitioner also filed a motion, dated June 6, 2006, with the Wayne County Circuit Court requesting a new trial, evidentiary hearing, oral arguments, and dismissal of all charges as well as an additional request to reconsider his motion for the production of the transcripts of the audiotape.

On November 13, 2006, the Wayne County Circuit Court issued an opinion and order denying in part and granting in part Petitioner's June 6, 2006 post-conviction motion. *People v. Maddox*, No. 04-005427 (Wayne Cnty. Cir. Ct. Nov. 13, 2006). In January 2007, Petitioner filed another motion with the circuit court, this time to correct alleged clerical errors.

In the meantime, in March 2007, Petitioner filed the instant habeas petition with this Court, raising the same nine claims raised in the state appellate courts.

On April 27, 2007, the Wayne County Circuit Court issued an opinion and order denying Petitioner's January 2007 motion to correct clerical errors. *People v. Maddox*, No. 04-005427 (Wayne Cnty. Cir. Ct. Apr. 27, 2007). In May 2007, Petitioner filed a motion for an order to show cause why Judge Diane M. Hathaway should not be held in contempt for "failure to prepare and file an answer in this case," with the circuit court. In that same month, Petitioner filed, with the Michigan Court of Appeals, a "Brief on Appeal to Appeal Motion to Correct Clerical Mistakes," in which he appeared to be challenging the circuit court's April 27, 2007, order. Petitioner also filed a supplemental brief regarding the circuit court's April 27, 2007, order.

In August 2007, Petitioner filed a motion to stay his habeas proceedings with this Court so that he could return to the state courts to fully exhaust his state-court remedies.

In an order and opinion dated September 26, 2007, the Wayne County Circuit Court denied Petitioner's May 2007 motion for order to show cause. *People v. Maddox-El*, No. 04-005427 (Wayne Cnty. Cir. Ct. Sept. 26, 2007). Petitioner then filed for a writ of mandamus in the circuit court. In an order dated November 12, 2007, the Wayne County Circuit Court denied Petitioner's request for a writ of mandamus. *People v. Maddox*, No. 04-005427 (Wayne Cnty. Cir. Ct. Nov. 12, 2007).

On December 11, 2007, this Court granted Petitioner's motion to stay the proceedings so that he could fully exhaust his state-court remedies, and the case was administratively closed by the Clerk of the Court.

On December 14, 2007, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal. *People v. Maddox*, No. 278045 (Mich. Ct. App. Dec, 14, 2007). Petitioner then filed an application for leave to appeal the Court of Appeals's order with the Michigan Supreme Court.

Petitioner subsequently filed a delayed application for leave to appeal the circuit court's September 26, 2007 and November 12, 2007 orders with the Court of Appeals. On January 17, 2008, the Court of Appeals issued an order denying Petitioner's application for leave to appeal "from the September 26, 2007 order denying [Petitioner's] motion for order to show cause and the November 12, 2007 order denying [Petitioner's] complaint for a writ of mandamus" because the Court of Appeals lacked jurisdiction, "since the orders in question actually denied successive motions for relief from judgment where no newly discovered evidence or retroactive change in the

law can be found." *People v. Maddox*, No. 282785 (Mich. Ct. App. Jan. 17, 2008). Nevertheless, Petitioner appealed the January 17, 2008 order of the Court of Appeals to the Michigan Supreme Court.

On September 9, 2008, the Michigan Supreme Court issued two separate orders. In the first order, the Supreme Court denied Petitioner's application for leave to appeal the December 14, 2007 order of the Court of Appeals because it was not persuaded that the questions presented should be reviewed. *People v. Maddox*, 482 Mich. 970, 754 N.W.2d 882 (2008). In the second order, the Supreme Court denied Petitioner's application for leave to appeal the January 17, 2008 order of the Court of Appeals because Petitioner's "motion for relief from judgment is prohibited by MCR 6.502(G)." *People v. Maddox*, 482 Mich. 970, 754 N.W.2d 882 (2008).

In that same month, Petitioner returned to this Court and filed an amended habeas petition and brief, raising the following claims:

I.      The trial court abused its discretion in denying counsel's motion to withdraw and in refusing Petitioner's request for substitution of counsel, thereby violating Petitioner's Sixth Amendment right.

II.     Trial counsel was ineffective for allowing admission of Petitioner's prior narcotics conviction as a named felony.

III.    The prosecution failed to meet its burden of proving beyond a reasonable doubt that Petitioner carried or possessed a firearm during the commission of a felony.

IV.     Petitioner's federal constitutional rights to a jury trial and proof beyond a reasonable doubt were violated when the court imposed a mandatory ten year prison sentence for the felony firearm count based on facts that were not found by a jury beyond a reasonable doubt.

V.      Was Petitioner denied effective assistance of counsel, [due to] his failure to file for discovery, failure to argue and obtain a ruling of Petitioner's motion

        to suppress search warrant and failure to produce alibi witness on the

-7-

relevant record.  [].

VI.     Was Petitioner denied his constitutional right to present a defense when the trial court denied his request for a continuance in order to secure the presence of alibi defense witness.  [].

VII.    [Did] the prosecutor['s] failure to timely comply with discovery[,] due to lack of jurisdictional law and obstructed the facts of no probable cause existed for search warrant which denied Petitioner his statute and constitutional rights of a fair trial and due process of law.

VIII.   Was Petitioner denied effective assistance of counsel by his attorney's failure to argue and obtain a ruling on Petitioner's motion to dismiss search warrant due to no relevant record of not having [constructive] possession or possession of a firearm.

IX.     Petitioner was denied effective assistance of counsel. Attorney failure to argue and obtain a ruling on Petitioner's motion to suppress search warrant.

X.      Would the Court of Appeals['s] decision remain the same and the Court of Appeals knew that Petitioner was confined and without counsel rendering no ability to contact or subpoena alibi witnesses.

XI.     Would the Court of Appeal decision remain the same had the Court of Appeals knew that counsel was originally retained and not originally appointed.

XII.    Would the Court of Appeals['s] decision remain the same and it knew the MCLA citation /PACC code were changed three different times without the proper motions to amend being filed?

XIII.   Are the rules of construction in criminal cases, so far as statutes are concerned must construed in favor of Petitioner where his substantial right are concerned?

XIV.    Would a jurist dismiss ineffective assistance of counsel claim, if the jurist is the cause of a VI amendment violation from the beginning?

XV.     Was Petitioner entitled to relief requested because the trial court had a misconception of the relevant law by misapplying the court rules causing harmful error that prejudiced the Petitioner, manifesting a 14th Amendment violation and VI Amendment violation.

XVI.    Does the Circuit Court has general power to correct inadvertent entries on

-8-

their records, when on proper motion and showing the end of justice so require to correct records to set out its proceedings?

XVII.   Would the audio tape demonstrate that counsel was retained and relieved prior to August 9, 2004, and other unlawful conduct that would require the audio tape to be transcribed to confirm fraud upon the court and void the judgment based on false information given to the Court of Appeals?

On October 10, 2008, this Court issued an opinion and order, in which it construed Petitioner's amended habeas petition as a motion to reopen the case and to amend the habeas petition. Concluding that Petitioner had exhausted his state-court remedies, the Court then lifted the stay, accepted the amended petition as timely filed, and ordered Respondent to file a responsive pleading. Respondent complied and filed his supplemental answer on March 31, 2009. The additional Rule 5 materials were filed on April 14, 2009. Petitioner's habeas petition is now ripe for consideration.

## II

### A

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2); *Franklin v. Francis*, 144 F.3d

429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify

issuance of the writ; rather, the state court's application of federal law "must have been objectively

unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)

(internal quotes omitted)).

Additionally, this Court must presume that the state court's factual determinations are

correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas

corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual

issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81,

84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of

historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases . . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at

409. The Court has explained that an unreasonable application of federal law is different from an

incorrect application of federal law. Under that language, "a federal habeas court may grant the writ

-10-

if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770 (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**B**

In his first habeas claim, Petitioner alleges that his Sixth Amendment right to counsel was violated when, on the eve of trial, the trial court refused to grant defense counsel's motion to withdraw and for substitution of counsel.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment does not guarantee, however, a "meaningful relationship" between counsel and a defendant. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006) (citations omitted). The right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court has recognized "a trial court's wide latitude in

balancing the right to counsel of choice against the needs of fairness, [], and against the demands of its calendar. *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 163-64; *Morris*, 461 U.S. at 11-12). Furthermore, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (citations omitted). Moreover, "while the right to select and be represented by one's preferred

attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159 (citing *Morris*, 461 U.S. at 13-14; *Jones v. Barnes*, 463 U.S. 745 (1983)).

Because an indigent defendant has no absolute right to appointed counsel of choice and because the focus of the Sixth Amendment inquiry is on effective advocacy, a criminal defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (footnote and citation omitted). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004) (citing *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971)).

The United States Court of Appeals for the Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the

conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *See Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131 n.8). These factors are balanced with the public's interest in the prompt and efficient administration of justice. *See Iles*, 906 F.2d at 1131 n.8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (same) (citing *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)).

With such standards in mind, the Michigan Court of Appeals denied relief on Petitioner's substitute-counsel claim, explaining in relevant part:

> Defendant first argues that the trial court erred in not allowing withdrawal and substitution of defendant's trial counsel. At trial, defendant told the trial court that he was "not satisfied" with counsel. Defendant claims that his trial counsel was not diligent in interviewing witnesses or filing motions, that there was an "irrevocable breakdown" in the attorney-client relationship, and that the trial court failed to sufficiently explore defendant's request for substitution of counsel.

> A trial court's decision on appointment of substitute counsel is reviewed for an abuse of discretion. A trial court's denial of a defense attorney's motion to withdraw is reviewed for an abuse of discretion. An abuse of discretion exists when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification for the ruling made.

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to the attorney of his choice simply by requesting that the attorney originally appointed be replaced. Appointment of substitute counsel is warranted "only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." Good cause is sufficiently shown when there is a legitimate difference of opinion between defendant and counsel regarding a fundamental trial tactic. Matters of professional judgment and trial strategy, however, are matters generally entrusted to the attorney. Good cause may be shown if defendant asserts that assigned counsel is "not adequate or diligent," or where the defendant asserts that "his lawyer is disinterested." But a mere lack of confidence in trial counsel will not warrant substitution. Additionally, "a judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require that a conviction following such an error be set aside." Because no evidentiary hearing

-13-

was held on this issue, our review is limited to errors apparent on the record.

> Defendant claims that counsel failed to present a motion to suppress the search warrant and to assert an alibi defense. This could amount to a difference of opinion on fundamental trial tactics. However, neither the record nor the briefs indicate the basis for the alibi defense. Defendant claims that alibi witnesses were available and makes the naked assertion that he was not present at the time and place of the controlled buy underlying the search warrant. Defendant fails, however, to name witnesses or to present his alleged alternative location. Defense counsel need not file frivolous motions nor take meritless positions. The record indicates that defendant was, in significant part, responsible for the deficiency in locating and identifying witnesses, and defendant was not prejudiced by any lack of diligence in the filing of motions. Further, the record indicates that defendant was given substantial opportunity by the trial court to establish the basis for his claim before trial, but failed to do so. We find no abuse of discretion on the part of the trial court for failure to order substitute counsel.

*Maddox*, 2006 WL 1412794, at *1-2 (citations and footnote omitted).

The Court of Appeals did not find any apparent errors on the record. This Court agrees. Petitioner's assertion that his Sixth Amendment rights were violated by the trial court, through its denial of counsel's motion to withdraw and in refusing to grant Petitioner's request for substitution of counsel, is without merit. Petitioner was an indigent defendant and his counsel was court appointed. A review of the record reveals that Petitioner has not provided any evidence of a legitimate difference of opinion regarding fundamental trial tactics between himself and defense counsel that would require substitution. Rather, the record demonstrates that the motion to withdraw and motion for substitution of counsel occurred because Petitioner was upset that he could not get a continuance from the trial court and not a conflict with defense counsel.

Moreover, the motions were made on the eve of trial. In light of that fact, and because Petitioner failed to demonstrate to the trial court that his request for substitution of counsel arose because of a substantial conflict with counsel, the trial court appropriately balanced Petitioner's right to counsel of his choice with the "public's interest in the prompt and efficient administration of

justice." *See Iles*, 906 F.2d at 1131 n.8.  Therefore, this Court concludes that the trial court's denial of Petitioner's request for substitution of counsel and its ancillary denial of counsel's motion to withdraw did not violate his right to counsel under the Sixth Amendment.  The Court of Appeals's decision with respect to this issue is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Habeas relief is not warranted.

## C

In his second, fifth, eighth, and ninth habeas claims, Petitioner alleges a variety of violations of his constitutional right to the effectiveness of trial counsel.  In his second habeas claim, he alleges that he was denied the effective assistance of counsel due to counsel's decision to allow into evidence an admission of his prior narcotics conviction.  In his fifth, eighth, and ninth habeas claims, all of which substantially mirror one another, he alleges that counsel rendered ineffective assistance because counsel failed to file for discovery, to produce alibi witnesses, and to argue and obtain a ruling on his motion to suppress evidence obtained during the execution of the search warrant on the ground that there was lack of probable cause and that Petitioner did not have possession of the firearm that was found by police at his residence on the day of the search.  The Court finds that these claims are without merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors sufficiently serious that she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have

been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify conduct that was "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is presumed to have rendered adequate assistance and made each significant decision with the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has recently emphasized that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel

satisfied *Strickland's* deferential standard." *Id.*

**1**

Petitioner raised his second habeas claim concerning the admission of the prior narcotics conviction on direct appeal to the Michigan Court of Appeals. The Court of Appeals, in addressing and rejecting the claim, stated:

> Defendant cites *People v. Swint*, [], for the proposition that failure to stipulate to a prior conviction amounts to ineffective assistance of counsel. First, we note that while a trial court is essentially required to accept a stipulation if one is offered by a defendant, this does not make failure to stipulate ineffective assistance of counsel per se. In *Swint*, the issue was the trial court's refusal to accept the stipulation, not trial counsel's failure to make a stipulation. In this case, while defendant did face charges for cocaine possession, defendant also faced more serious charges involving possession of a firearm, when considering the mandatory sentence involved. The prior cocaine conviction did not involve a firearm. Therefore, defense counsel may have concluded that allowing the charge to be admitted into evidence was sound strategy, showing that defendant had committed like conduct without the use of a weapon. Further, evidence of defendant's commission of cocaine possession was overwhelmingly supported by testimony and other evidence offered at trial. We find that trial counsel did not perform below an objective standard of reasonableness, and, in any event, there is no reasonable probability that the proceeding would have turned out differently if trial counsel had stipulated to the prior felony. Counsel's assistance in this case was not ineffective.

*Maddox*, 2006 WL 1412794, at *3 (citations omitted).

With respect to Petitioner's second habeas claim, the Court of Appeals determined that, based on the record, Petitioner did not demonstrate how his trial counsel's performance fell below the objective standard of reasonableness and so prejudiced him that such a performance was outcome determinative. The Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Counsel's decision to allow into evidence an admission of Petitioner's prior narcotics conviction could well have been a strategic decision, and, therefore, not unreasonable under the circumstances.

-17-

Defense counsel could have decided as a matter of trial strategy to inform the jury of Petitioner's prior conviction because his trial theory was that the defendant did not possess the gun. It was reasonable for defense counsel to inform the jury that Petitioner's prior conviction did not involve a firearm. Moreover, Petitioner was not prejudiced by that admission. The trial court instructed the jury that Petitioner's previous conviction could only be used to determine whether he was guilty of the felon-in-possession charge and could not be used to prove that he was guilty of any drug charge. Michigan courts presume that juries follow their instructions. *People v. Graves*, 458 Mich. 476, 581 N.W.2d 229, 234 (1998).

In regard to his second habeas claim, the Court concludes that Petitioner has not demonstrated that his counsel was ineffective. Habeas relief is not warranted.

## 2

In his fifth, eighth, and ninth habeas claims, Petitioner asserts that trial counsel was ineffective for failing to obtain discovery, to reasonably investigate the case, to argue a motion to suppress, and to present an alibi defense.

Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable decision that further investigation is unwarranted. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "American Bar Association standards [] also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (citations omitted); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information

-18-

concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)).   Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Decisions concerning the evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy.   The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).   When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

With respect to Petitioner's allegations that defense counsel rendered ineffective assistance concerning discovery matters and in producing alibi witnesses, the Court concludes that Petitioner has not demonstrated a violation of the *Strickland* standard.   In addressing this claim, the Court of Appeals found, "the record indicates that [Petitioner] was, in significant part, responsible for the deficiency in locating and identifying witnesses." *Maddox*, 2006 WL 1412794, at *2.

At the August 10, 2004, pre-trial conference hearing, the prosecutor explained that Petitioner should have had his discovery list, including witnesses, prepared by June 26, 2004, which would have been thirty days prior to when Petitioner was first scheduled to go to trial on July 26.   On August 10, when Petitioner was next scheduled to begin trial, his counsel stated that Petitioner had just given him the names of his proposed witnesses, as well as some location information about the

-19-

three proposed witnesses, including Joyce Rivers.  In light of Petitioner's lack of diligence with respect to informing his attorney about potential alibi witnesses and their location, it cannot be said that counsel's performance regarding discovery matters, including the production of alibi witnesses, was unreasonable.

Moreover, Petitioner was not prejudiced by counsel's performance in light of the fact that the only identifiable "crucial witness" mentioned by name on the record was Joyce Rivers, who counsel successfully located and who indeed testified on Petitioner's behalf at trial.  Consequently, Petitioner has not demonstrated how his trial counsel's performance fell below the objective standard of reasonableness and so prejudiced him that such a performance was outcome determinative with respect to either discovery or locating alibi witnesses.

Turning to Petitioner's allegation that his attorney rendered ineffective assistance regarding the search warrant executed on May 10, 2004, Petitioner's assertion lacks merit. Specifically, Petitioner contends that his attorney should have filed a motion to suppress the evidence obtained when the search warrant was based on his assertion that "he was not present at the time and place of the controlled buy underlying the search warrant."  However, as the Court of Appeals succinctly summarized, "[a] motion to quash or suppress the search warrant was indeed heard and denied by the [trial] court, although suppression based on [Petitioner's] claimed lack of presence at the home when the controlled buy occurred was not entertained by the court because it was not previously raised." *Maddox*, 2006 WL 1412794, at*2 n.1.  The motion to suppress the warrant was heard at a pre-trial hearing on August 11, 2004—a week prior to the eventual start of the trial on August 18.

Inasmuch as Petitioner's assertion that defense counsel should have challenged the validity of the warrant due to lack of probable cause encompasses his argument that "he was not present at

the time and place of the controlled buy underlying the search warrant," the record from the August

11 hearing shows that counsel did raise such a challenge:

> MR. PERLMAN: Your Honor, one further point, if I may? Mr. Maddox claims that when the controlled buy was allegedly made he wasn't even in town. And that is basically one of the issues that he wants to raise. Because the search warrant was based on a controlled buy that Mr. Maddox claims never occurred.

Pre-Trial Motion Hr'g, 7 Aug. 11, 2004.

However, the trial court refused to entertain the issue, one week prior to trial. The jury was

already selected and the deadline to file such motions had long passed:

> THE COURT: Motions were supposed to be time stamped and filed no later than June 30. Everybody was made aware of that at the calendar conference that was held on June 7th. This Court received no motions regarding that issue. And we had a final conference and a motion hearing date of July 15th. This defendant brought forth no motions regarding that. And now for the defendant to bring up this issue, it's a little late seeing how we already picked the jury yesterday. And the prosecutor wasn't aware of this. I wasn't made aware of this. And so, I'm not going to hear the motion regarding that issue.

Pre-Trial Motion Hr'g, 8 Aug. 11, 2004.

With respect to this issue, the Court finds that Petitioner has not demonstrated that counsel's

performance fell below an objectively reasonable standard. Counsel raised the issue and the trial

court rejected his request. Because Petitioner had not provided counsel any names or contact

information of potential alibi witnesses until the weekend prior to August 11, he cannot claim that

his defense was prejudiced. A motion to suppress based on an alibi defense would have likely failed

given that he ultimately could produce no witnesses supporting his contention that he was not

present at the time and place of the controlled buy underlying the search warrant.

Petitioner's final allegation is that his counsel rendered ineffective assistance because he

failed to file a motion to suppress the evidence seized during the execution of a search warrant.

Petitioner argues that he did not have possession of the firearm that was found by police at his residence on May 10, 2004. Such an assertion is also without merit. The motion would have been frivolous and, as the Court of Appeals noted, defense counsel is not required to file frivolous motions or take positions that lack merit.

Petitioner's assertions of ineffective assistance of counsel within his second, fifth, eighth, and ninth habeas claims are without merit. He has failed to demonstrate how defense counsel's actions were constitutionally defective. He is not entitled to habeas relief with respect to those claims.

**D**

In his third habeas claim, Petitioner alleges that the prosecutor failed to produce sufficient evidence to convict him of felon in possession and felony firearm. Specifically, Petitioner argues that the prosecution failed to meet its burden of proving beyond a reasonable doubt that he carried or possessed a firearm during the commission of a felony.

The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). A habeas petitioner claiming that the evidence was insufficient to convict him confronts the conclusions of fact reached by both the state trial court and the state appellate court. *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

First, regarding the state trial court's conclusions, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements

-22-

of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (emphasis in the original) (citing *Jackson v. Virginia*, 443 U.S. 307, 319(1979)).  In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).  Therefore, even if a federal habeas court might have not convicted the defendant had it been the factfinder, it must uphold the verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution.

Second, regarding the state appellate court's conclusions, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205; *see also Tucker v. Palmer*, 541 F.3d 652, 666 (6th Cir. 2008) (citing 28 U.S.C. § 2254(d)(1)).  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt.  *See Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000).

"A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *McDaniel v. Brown*, 558 U.S. ---, 130 S.Ct. 665, 673 (2010) (quoting *Jackson*, 443 U.S. at 326).

Under Michigan law, the elements of felon in possession of a firearm are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since

-23-

the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See* Mich. Comp. Laws § 750.224f. The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *See* Mich. Comp. Laws § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003).

The Court of Appeals, in addressing this claim, stated:

Next, defendant argues that the evidence offered at trial was insufficient to show that he "possessed" a firearm. Defendant argues that at the time of his arrest he was in an upstairs bedroom, while the gun was located in the first floor living room behind a couch; therefore, he could not have been found in possession of firearm.

\* \* \*

Possession of a firearm can be either actual or constructive. Constructive possession may be established "if the location of the weapon is known and it is reasonably accessible to defendant." Possession of a weapon during a drug-possession offense "can take place over an extended period, during which an offender is variously in proximity to the firearm and at a distance from it." In *Burgenmeyer*, where the defendant was arrested two blocks away from his home in which a gun and drugs were found, our Supreme Court stated that the "defendant's access to the weapon should not be determined solely by reference to his arrest, but should also rely upon his access to it when the crime was committed." The Court stated that "[i]n a case of that sort, the focus would be on the offense dates specified in the information."

Defendant was charged with possession of marijuana with intent to deliver and with possession of cocaine. It would be sufficient for the prosecution to show that defendant knew the location of the weapon and had reasonable access to it, thus constructively possessing it, either during the possession of the marijuana or of the cocaine, or while being a felon in possession of a firearm, on or about May 10, 2004, the date specified in the information.

Evidence was offered at trial that defendant stated, at the time of his arrest, that the home where he and the firearm were found was his residence. Additionally, defendant's own witness referred to the residence as "his [defendant's] house." The evidence indicated that no one but defendant resided in the home. Because the weapon was found in defendant's home, a reasonable juror could infer that defendant

-24-

knew of its location.  Because the gun was found in the living room, where zip-lock baggies identified as the type used in drug sales were found, and which were in fact the same type as 27 baggies found in the bedroom with defendant filled with marijuana in apparent preparation for sale, a reasonable juror could conclude that drug activity was taking place in the living room, in close proximity to the weapon on the day of defendant's arrest, and therefore the gun was reasonably accessible to the defendant during the commission of the crime.  Viewing the evidence in a light most favorable to the prosecution, defendant's argument that the evidence was insufficient for conviction fails.

*Maddox*, 2006 WL 1412794, at *3-4 (citations omitted).

The record supports the Court of Appeals's conclusion.  Viewing all of the evidence in a light most favorable to the prosecution, the testimony and evidence presented at trial sufficiently established that a reasonable trier of fact could find Petitioner guilty of felon in possession of a firearm and felony firearm, beyond a reasonable doubt.  Possession of a firearm is an element of both felon in possession of a firearm and felony firearm, and, under Michigan law, possession can be either actual or constructive.

Trial testimony revealed that, although Petitioner and the marijuana were found in the upstairs bedroom, money, numerous empty zip-lock bags, like those typically used for a drug sale, a bulletproof vest, and the rifle were found in the living room.  Petitioner told the police that it was his house and never mentioned anyone else living there.  Although Rivers testified that the gun was hers, she testified that it was a .22 caliber rifle in a brown leather case, where the police found a .30 caliber rifle in a plastic case.  It was for the jury to determine Rivers's credibility and whether the rifle was accessible to Petitioner.

Petitioner has not established that the state-court convictions were either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Therefore, he is not entitled to habeas relief with respect to this claim.

-25-

**E**

Petitioner alleges in his fourth habeas claim that he was denied his right to be convicted by a jury beyond a reasonable doubt when the trial court sentenced him to a mandatory ten-year prison sentence on the felony-firearm conviction. Specifically, Petitioner asserts that the trial judge relied on facts in reaching his sentencing decision that were not found by a jury beyond a reasonable doubt.

First, to the extent that Petitioner alleges violations of Michigan's constitution, Michigan law, or Michigan court rules, his claim is not cognizable upon federal habeas review. A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a). Therefore, habeas relief may not be based upon perceived error of state law. *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)).

Under Michigan Compiled Laws section 750.227b(1), a person convicted a third time of violating Michigan's felony firearm statute "shall be imprisoned for 10 years." The trial judge sentenced Petitioner to ten years in prison on the felony-firearm conviction because he was a third offense habitual offender. In Michigan, a sentencing court may consider all record evidence before it in establishing a sentence, including admissions by the defendant, trial evidence or testimony, and the pre-sentencing report.

Petitioner's first claim involves an alleged violation of state statutory law with regard to Michigan's habitual offender sentencing scheme, that is not cognizable and habeas relief is not warranted.

Second, to the extent that Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), to support his claim, his reliance is misplaced.

-26-

Petitioner's second claim that his federal constitutional rights were denied by the trial court's ten-year sentence for the felony-firearm conviction was addressed by the Court of Appeals, which stated,

> In this case, the only fact required to be found for defendant's sentence enhancement was the existence of prior convictions, and this was established at the sentencing hearing through defendant's presentence investigation report (PSIR). Defendant effectively waived this issue at his sentencing hearing when he stipulated that the PSIR was accurate. And *Blakely* specifically makes an exception for prior convictions, holding that "[o]ther than the fact of a prior conviction" any fact that increases the penalty for a crime must be found beyond a reasonable doubt by a jury. Defendant's argument fails on all levels.

*Maddox-El*, 2006 WL 1412794, at *4 (citations omitted).

Petitioner's claim was later addressed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* [*v. New Jersey*, 530 U.S. 466, 490 (2000)] by finding facts that raised his minimum sentence. But *Harris v. United States*, [536 U.S. 545, 563 (2002) ] resolved that *Apprendi's* rule does not apply to judicial fact-finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (holding that the *Blakely-Apprendi* rule does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial fact-finding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). Because Petitioner's sentence fell within the statutorily-authorized maximum penalty of imprisonment, which was not enhanced by judicial fact-finding, no Sixth Amendment violation occurred.

Petitioner's fourth habeas claim is non-cognizable and does not implicate the *Blakely* decision. Habeas relief is, again, not warranted.

-27-

**F**

In his sixth habeas claim, Petitioner alleges that he was denied his constitutional right to present a defense after the trial court denied his request for a continuance. Petitioner alleges that he moved for a continuance in order to secure the presence of alibi witnesses. This claim lacks merit.

Although Petitioner raised this claim on direct appeal to the Michigan Court of Appeals through his supplemental brief, the Court of Appeals found the arguments contained within the brief "largely rambling and barely coherent, if at all." *Maddox*, 2006 WL 1412794, at *5. While the Court of Appeals could not decipher Petitioner's argument regarding his alleged motion for continuance, it did find Petitioner's alibi defense severely lacking in specifics:

> Neither the record nor the briefs indicate the basis for the alibi defense. Defendant claims that alibi witnesses were available and makes the naked assertion that he was not present at the time and place of the controlled buy underlying the search warrant. Defendant fails, however, to name witnesses or to present his alleged alternative location . . . the record indicates that defendant was, in significant part, responsible for the deficiency in locating and identifying witnesses . . . Further, the record indicates that defendant was given substantial opportunity by the trial court to establish the basis for his claim before trial, but failed to do so.

*Maddox*, 2006 WL 1412794, at *2.

To the extent that Petitioner alleges a violation of Michigan's constitution, his sixth habeas claim is not cognizable upon federal habeas review. Habeas relief may not be based upon a perceived error of state law. *Estelle*, 502 U.S. at 67-68.

To the extent that Petitioner's claim can be interpreted to allege a violation of his federal constitutional rights, his claim is without merit. A trial court's denial of a continuance rises to the level of a constitutional violation only where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.' " *Morris*, 461 U.S. at 11-12 (quoting

-28-

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  *Ungar*, 376 U.S. at 589.  To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance; he "must also show that the denial of a continuance actually prejudiced his . . . defense."  *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).  "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense."  *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Here, to the extent that Petitioner alleges that the trial court should have granted him a continuance at the pre-trial conference hearing on August 10, 2004—the day his trial was originally scheduled to begin—his assertion is misplaced.  In response to defense counsel's motion for continuance or adjournment, the prosecutor objected because Petitioner had almost two months in order to get his witness list together:

> MS. HAGAMAN:  Well, Your Honor, the only thing that I have to say is that the trial date was originally scheduled for July 26, 2004, and by, well June 26, 2004 Mr. Maddox should have talked to his witnesses and had them prepared on a witness list, and filed with the People.  Pursuant to court rule, we're supposed to have discovery list thirty days from trial date, including witnesses.
>
> The trial was adjourned, until the tenth, today, because the officers were not available for trial, two of the officers that were essential in this case were on furlough.  That was an adjournment at the People's request.  We still have not received a witness list from the Defendant.
>
> I would simply state that I don't believe that's an adequate reason to adjourn the trial, at this point.  It's my understanding that the Court wants to pick a jury today, hold the evidentiary hearing tomorrow on the eleventh, and then, continue with the trial on the eighteenth.

Pre-Trial Hr'g, 8-9 Aug. 10, 2004.

Petitioner was not prejudiced by the trial court's denial of his motion for continuance because, not only did he have more than enough time prior to August 10, 2004 to get his witness list together, but he also had an additional week to do so, up until August 18. As the prosecutor stated at the pre-trial conference hearing, she had no objection to Petitioner filing his witness list late:

> MS. HAGAMAN: The witness list can be given to me at any particular point between now and then. I mean, obviously, I would have liked it thirty days ago, so I would have an opportunity to go out and investigate these people as we're allowed to do. To speak with them myself before they were to testify on the eighteenth. But, as long as I have an opportunity to speak with them before trial gets under way on the eighteenth, I have no objection to him filing a witness list late.

Pre-Trial Hr'g, 9 Aug. 10, 2004.

In addition to the prosecutor's accommodation of Petitioner, Petitioner was not prejudiced by the trial court's denial of his motion for continuance because his main witness, Rivers, testified on his behalf at trial. At the pre-trial conference hearing, defense counsel had stated that as of that day, August 10, 2004, he had been unable to get in touch with Rivers, "who [was] crucial to the defense in this case," and had not yet obtained a specific address for her. In contrast, defense counsel stated that he had obtained the names and addresses for two other potential defense witnesses, yet those two witnesses did not appear at trial.

For the reasons noted by the Court of Appeals regarding Petitioner's lack of a basis for asserting an alibi defense, as well as because the record demonstrates that Petitioner did not suffer identifiable prejudice, the trial court did not violate Petitioner's constitutional right to present a defense when it rejected Petitioner's request for a continuance. Habeas relief is not warranted.

## G

In his seventh habeas claim, Petitioner alleges that the prosecutor committed misconduct by

-30-

failing to "comply with discovery" due to lack of jurisdiction and by concealing that "no probable cause existed" for the search warrant executed by the police. Petitioner also alleges that he was denied due process of law when the prosecution withheld police and lab reports in violation of *Brady v Maryland*, 373 U.S. 83 (1963).

First, to the extent that Petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). Habeas relief may not be based upon perceived error of state law. *Estelle*, 502 U.S. at 67-68.

Second, regarding Petitioner's *Brady* claim, the Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995) (same). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the

-31-

prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley*, 473 at 682; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994) (same). Moreover, a *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *See United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence not known to the petitioner and not available from another source was suppressed by the prosecution; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (same). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

Petitioner raised this claim on direct appeal to the Michigan Court of Appeals in his supplemental brief. The Court of Appeals found the arguments contained within the brief "largely rambling and barely coherent, if at all." *Maddox*, 2006 WL 1412794, at *5. Accordingly, the Court of Appeals determined, "Inasmuch as prosecutorial misconduct is claimed, the record provides no support for this contention, and defendant's argument fails." *Id.*

Petitioner's assertions are groundless and he misconstrues the record. At trial, Officer Todd Eby testified that he confiscated "crushed up crack cocaine" from Petitioner's residence which he placed in two zip-lock bags "for purposes of conveying the narcotics to headquarters." Trial Tr. vol.

-32-

III, 20 Aug. 18, 2004. Officer Eby did not testify about how much cocaine he had found, and, contrary to Petitioner's assertion, there was no discrepancy regarding the amount of cocaine found by police at Petitioner's residence and the amount of cocaine that was stipulated to at trial. There was no *Brady* violation, and Petitioner's assertions of prosecutorial misconduct in that regard are unsupportable by the record, as the Court of Appeals properly found.

As to Petitioner's claim of prosecutorial misconduct with respect to concealing that "no probable cause existed" for the search warrant executed by police at Petitioner's residence, that assertion is equally groundless. The Court of Appeals found that "a motion to quash or suppress the search warrant was indeed heard and denied by the [trial] court, although suppression based on [Petitioner's] claimed lack of presence at the home when the controlled buy occurred was not entertained by the court because it was not previously raised." *Maddox*, 2006 WL 1412794, at *2 n.1.

Under *Stone v. Powell*, 428 U.S. 465, 494 (1976), a criminal defendant may not collaterally attack a state conviction on the ground that illegal evidence was admitted at trial where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim. That is, if a state provides a full and fair opportunity to litigate a Fourth Amendment claim, a federal habeas court need not consider whether a trial court should have excluded evidence obtained in an unconstitutional search or seizure. *Cardwell v.Taylor*, 461 U.S. 571, 572 (1983).

Here, Petitioner had a full and fair opportunity to present to the state courts his Fourth Amendment claim concerning the search warrant. Since Petitioner has failed to demonstrate that he was denied an opportunity for full and fair litigation of that claim, any claim regarding the validity of the search warrant is not cognizable on habeas review. Accordingly, Petitioner's

argument that he was denied due process of law because of the prosecution's alleged "concealment" of the lack of probable cause for the execution of the search warrant lacks merit.  Habeas relief is not warranted.

## H

Petitioner's tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth habeas claims were not presented to the Michigan Court of Appeals on direct review. Thus, Respondent contends that the claims are procedurally defaulted.

Federal habeas relief may be precluded on claims that a petitioner has not presented them to the state courts in accordance with the state's procedural rules.  *Wainwright v. Sykes*, 433 U .S. 72, 85-87 (1977).  Procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).

Procedural default bars consideration of a federal claim on habeas review if the last state court rendering a judgment " 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last explained state court judgment is used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Petitioner presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which

provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3)(a) and concluded that Petitioner had not shown cause, i.e., that appellate counsel was ineffective, or prejudice because his underlying claims lacked merit, nor had he demonstrated his actual innocence. Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Petitioner neither asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims nor has he established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S.

-35-

298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are barred by procedural default, lack merit, and do not warrant habeas relief.

Furthermore, as explained in the preceding sections, a federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." Habeas relief may not be based upon perceived error of state law. In this case, Petitioner's claims concern the correct application of either Michigan court rules, evidentiary rules, or other matters that are exclusively governed by Michigan law, such as the correction of perceived mistakes in the docket sheets maintained by the Wayne County Circuit Court. Accordingly, the remainder of Petitioner's claims, claims ten through seventeen, are not reviewable by this Court.

Moreover, to the extent that any of Petitioner's aforementioned claims can be construed as cognizable upon federal habeas review, they nonetheless contain repetitive arguments that Petitioner has brought forth in his first nine claims. *See* Section II, B through G, *supra*. Thus, for all the reasons presented above, the Court concludes that Petitioner is not entitled to relief on habeas claims ten through seventeen.

### III

Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

-36-

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. []. When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

After conducting the required inquiry and for the reasons stated herein, the Court is satisfied that jurists of reason would not find its rulings debatable. No certificate of appealability is warranted in this case and any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, it is **ORDERED** that the petitions for a writ of habeas corpus (ECF Nos. 1, 35) are **DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability and **DENIES** him an application for leave to appeal *in forma pauperis*.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 26, 2012

-37-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means and on Keith Maddox, #166273, Carson City Correctional Facility, 10522 Boyer Road, Carson City, Michigan 48811by first class U.S. mail on March 26, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS